['Civ. No. 2563. Third Appellate District.—April 9, 1923.]

In the Matter of the Estate of JOHN QUINCY WRENN, Deceased. JOSEPH T. WRENN, Executor, Appellant, v. NELLIE E. DORMODY, Guardian, etc., Respondent.

[1] HOMESTEAD—DECLARATION DURING COVERTURE—DEATH OF WIFE—SECOND MARRIAGE OF SURVIVOR—EFFECT OF.—Under the provisions of section 1474 of the Code of Civil Procedure a homestead declared by a husband during coverture either on the community property or on his separate property vests absolutely in him upon the death of the wife, and such homestead property does not continue as a homestead for the benefit of a second community upon his remarriage, since the unqualified title he obtains under such section is inconsistent with the existence of a homestead for the benefit of himself and his second wife.

APPEAL from a judgment of the Superior Court of El Dorado County. George H. Thompson, Judge. Affirmed.

The facts are stated in the opinion of the court.

E. J. Fitzgerald for Appellant.

Abe Darlington and Charles A. Swisler for Respondent.

HART, J.—This is an appeal by the executor of the estate of John Quincy Wrenn, deceased, from a judgment selecting, designating and setting apart a probate homestead for two certain minor children of the decedent.

The proceeding is founded on section 1465 of the Code of Civil Procedure, which, among other things, provides for the setting apart, under certain indicated circumstances, of a homestead for the use of the minor children, out of the common property, or if there be no common property, then out of the real estate belonging to the deceased.

The facts are: The deceased, who was a retired physician, was a resident of Placerville, California, for many years prior to his death on January 14, 1921. He was twice married. By his first wife, Elizabeth K. Wrenn, he had two children, Florence and Joseph T. Wrenn, of whom the latter

alone was living at the time of the filing of the petition herein on the thirteenth day of August, 1921, the daughter, Florence, having died prior to said time.

On the seventeenth day of February, 1892, and during the life of his first wife and while they were living together as husband and wife, the deceased filed in the recorder's office of the county of El Dorado a declaration of homestead on lot No. 4, in block No. 43 of the city of Placerville. The deceased and his family were, at that time, residing on said premises. Subsequently to the filing of said homestead, the wife of the deceased, Elizabeth K. Wrenn, died, and thereafter the deceased again married, his second wife being Sarah E. Wrenn. The deceased and his second wife continued to live on the property upon which the declaration of homestead was filed by the former in February, 1892, and occupied said premises until the month of October, 1920, when they removed to a house which deceased purchased in said month situated at 61 Coloma Street in said city of Placerville, several doors above the old family home, and there he and his family took up their residence and continued to reside until January 14, 1921, when, as above stated, he passed out of this life. The issue of the second marriage consisted of two children, to wit, William B. D: Wrenn and Martha Agnes Wrenn, and these children, with their mother, after the death of Dr. Wrenn, continued to reside on the premises at 61 Coloma Street until the death of Sarah E. Wrenn on May 18, 1921, which was approximately four months after the death of Dr. Wrenn.

Dr. Wrenn left a will, dated March 4, 1920, in which, after making several bequests to relatives and friends, he devised the old family residence at 49 Coloma Street in said city to Sarah E. Wrenn, his wife. The balance of his estate was divided equally between his heirs at law, Sarah E. Wrenn, Joseph T. Wrenn, a son of the deceased by his first wife, and the two children of the last marriage, William B. D. and Martha Agnes Wrenn. As stated, Sarah E. Wrenn died on the eighteenth day of May, 1921. She left a will leaving all her estate, both real and personal, to her two children, William B. D. and Martha Agnes Wrenn, and naming Nellie E. Dormody as the guardian of their persons and estates and also as the executrix of her will.

On the thirteenth day of August, 1921, the said Nellie E. Dormody, as the guardian of the persons and estates of the said William B. D. and Martha Agnes Wrenn, filed a petition with the clerk of the superior court of El Dorado County, praying that the family residence at 61 Coloma Street be set aside as a homestead for said two children. These children were minors at the time of the filing of said petition.

The petition of the said Nellie E. Dormody alleged, among other things, that no homestead had ever been selected, designated, and set aside by John Quincy Wrenn during his lifetime and further alleged that said John Quincy Wrenn and his family had resided at 61 Coloma Street continuously until his death. It also alleged, although this allegation is not material to the determination of the question submitted here, that Sarah E. Wrenn in her will "requested that the said family home be kept intact and that said minors be kept and maintained therein." The petition was in due time answered by Joseph T. Wrenn, as executor of the will of John Quincy Wrenn, deceased, after a demurrer to said petition had been overruled by the court. By said answer the allegation of the petition that the deceased, John Quincy Wrenn, did not in his lifetime select, designate, and set aside and cause to be recorded a homestead was denied, and in this connection the answer set up the declaration of homestead filed by said John Quincy Wrenn with the county recorder of El Dorado County, and alleged that the said "declaration of homestead has never been cancelled, abandoned, or disposed of as the homestead of John Quincy Wrenn." The answer further denied the allegation of the petition that the premises at 61 Coloma Street had been used continuously by the deceased and his family up to the time of his death, and alleges that he and "his family had merely moved into the house at 61 Coloma Street temporarily or until certain repairs could be made upon the homestead at 49 Coloma Street."

Testimony was received in support of and in opposition to the allegations of the petition and the court made its findings of fact in accordance with the facts as set forth in the said petition. Among other things, the court found that the property described as lot No. 6 in block 43 (known as 61 Coloma Street) of said city of Placerville was the

community property of said John Quincy Wrenn and his wife, Sarah E. Wrenn; that said lot contains the dwelling-house in which said John Quincy Wrenn and his family resided up to the time of his death and in which his family continued to reside thereafter; that the same is suitable for a homestead for said minors; that the said real property does not exceed in value the sum of $5,000, but is of the value of $3,500.

[1] The single question presented here for decision is whether, as counsel for the appellant contends is true, the trial court transcended its lawful power in setting aside the property at No. 61 Coloma Street as a probate homestead for the use and benefit of the two above-named minor children of the deceased by his second wife. The contention of the appellant is that two homesteads cannot be declared and acquired by a party, and that, therefore, a party having already acquired a homestead, any attempt by him or her to acquire a second homestead while the former is still in force or has not been destroyed by abandonment, as provided by section 1243 of the Civil Code, is absolutely void. The proposition thus stated is sound if the premise from which it proceeds supports it. (See *Waggle* v. *Worthy*, 74 Cal. 268 [5 Am. St. Rep. 445, 15 Pac. 831]; *Estate of Clavo*, 6 Cal. App. 774, 776 [93 Pac. 295].) There is, however, no question of abandonment in this case, the proposition simply being whether the homestead declared and recorded by the deceased, Dr. Wrenn, in the year 1892, inured as a homestead to the use and benefit of his second wife or the second community. Section 1474 of the Code of Civil Procedure itself seems to determine the proposition adversely to the contention of the appellant. Said section provides:

"If the homestead selected by the husband and wife, or either of them, during their coverture, and recorded while both are living, was selected from the community property, or from the separate property of the persons selecting or joining in the selection of the same, it vests, on the death of the husband or wife, absolutely in the survivor. If the homestead was selected from the separate property of either the husband or wife, without his or her consent, it vests on the death of the person from whose property it was selected in his or her heirs or devisees, subject to the power

of the superior court to assign it for a limited period to the family of the decedent. . . . ''

It will be observed that under the foregoing section, where the homestead is selected from the community property, or from the separate property of the person selecting or joining in the selection of the same, it vests on the death of the husband or wife absolutely in the survivor. If, however, it was selected from the separate property of either the husband or wife without his or her consent, it vests on the death of the person from whose property it was selected in his or her heirs or devisees, subject to the power of the superior court to assign it for a limited period to the family of the decedent. In this case it does not appear whether the homestead declared by Dr. Wrenn was from his or his first wife's separate property or from the community. The homestead declaration makes no reference to the character of the property from which the homestead was selected, nor did the first wife of the deceased join in the selection of the homestead. But whether it was selected from the community property of the spouses or from the separate property of the one or the other without the consent or the joining in of such selection by the spouse whose separate property it was, the result, so far as this case is concerned, would be the same. If it was community property or the separate property of Dr. Wrenn, then, upon the death of his first wife, the property vested absolutely in him, with power to dispose of it as he might see fit, the property, however, retaining the characteristic of a homestead to the extent that it was exempt from forced sale for the debts of the survivor. (*Tyrell* v. *Baldwin*, 78 Cal. 470 [21 Pac. 116]; *Dicky* v. *Gibson*, 113 Cal. 30 [54 Am. St. Rep. 321, 45 Pac. 15].) The record does not disclose the date of the death of the first wife, but if it was her separate property, she not having joined in the declaration or the selection of the homestead, the property, if she died prior to the amendment of section 1474 of the Code of Civil Procedure in the year 1911, would go to her heirs (see Deering's Code Civ. Proc. 1909, sec. 1474), but if she died after the amendment of 1911 went into effect then it would go either to her heirs or devisees (Stats. 1911, p. 254). Thus readily will it be seen that at the time of the marriage of Dr. Wrenn to Sarah E. Wrenn, his second wife, there was, to all prac-

tical intents and purposes, no homestead in existence upon the property referred to.

This question, however, has been squarely passed upon by the higher courts. In *Estate of Clavo,* 6 Cal. App. 774 [93 Pac. 295], one Charles Clavo filed a declaration of homestead during the life of his first wife upon a certain piece of property which belonged to his separate estate. His wife joined him in the execution of the declaration of homestead. Thereafter the said wife died and Clavo again married and subsequently to his second marriage he alone executed and filed a declaration of homestead upon the same property. The point urged on appeal was that "a party cannot have two homesteads and if he attempts to acquire a second while the first is in force the second is void." This court held that the force of the homestead first declared had expired by reason of the fact that upon the death of the first wife of Clavo the property upon which the homestead was declared vested under the terms of section 1474 of the Code of Civil Procedure absolutely in the surviving husband, Clavo. It was therein said:

"Upon the death of the first wife the title to the property became vested absolutely in the husband, and he was clothed with complete dominion over it, but by virtue of the statute it still retained some characteristics of a homestead, among them being exemption from execution. While that exemption continued, he could not select another and different homestead. But the title having vested completely in the husband upon the death of his wife, the property could not, in the very nature of the case, continue as a homestead for the benefit of the second community. The unqualified title of one of the spouses to the property is inconsistent with the existence of a homestead for the benefit of both. After his second marriage, in order to clothe the property with all the attributes of a community homestead, it was necessary for the husband to file another declaration. This he did as he had a right to do, and the effect of it was that upon his death the property vested absolutely in his widow as it would have vested in the former wife under the first declaration if she had survived him."

In *Zanone* v. *Sprague,* 16 Cal. App. 333 [116 Pac. 989], one Alfred Coad duly declared and filed a homestead upon his separate property. Thereafter said Coad was divorced

from his wife and subsequently thereto he again married and resided with his second wife upon the premises upon which the said homestead was filed until the time of his death in 1906. After the death of Coad an action was brought by the first wife for the purpose of determining her claim that she was the owner of the fee in the premises by reason of the said homestead thereon, the same never having been abandoned. Her claim was not sustained. It was, however, said in the opinion in that case, upon the authority of *Estate of Clavo, supra:* "Of course, it will not be contended that the homestead in question here could inure to the benefit of the second wife."

There are many cases reviewed in *Estate of Clavo, supra,* and we refer also to those for further light upon the question herein involved. It is very clear that the court below did not go beyond the authority conferred upon it by section 1465 of the Code of Civil Procedure in setting aside the premises in question as a homestead for the use of the minor children of the deceased by his second wife.

The judgment appealed from is affirmed.

Burnett, J., and Finch, P. J., concurred.