**In the Matter of Melvin J. TOWERS, Bankrupt.**

**No. 13583.**

United States District Court
N. D. California, N. D.
Dec. 19, 1956.

Mazzera, Snyder & DeMartini, Stockton, Cal., and Nathan B. McVay, Modesto, Cal., for petitioner.

Shapro & Rothschild, San Francisco, Cal., for respondent.

HALBERT, District Judge.

The bankrupt, as petitioner here, has filed with this Court a petition for a review of the order of the Referee determining exempt property, wherein the Referee fixed at $3,000 the amount of a homestead exemption to be allowed to the bankrupt under § 6 of the Bankruptcy Act, 11 U.S.C.A. § 24 in accordance with the laws of the State of California, Civil Code, § 1260.

Briefly, the facts are that the bankrupt executed and recorded a declaration of homestead (the validity of which is not questioned) on December 22, 1953, in which he alleged the declaration was made as a single man. It appears that after the filing of this original declaration of homestead, the bankrupt's mother was widowed and came to live with him. Without abandoning the original homestead, the bankrupt, on January 13, 1954, then filed an amended declaration of homestead as the head of a family covering the same real property described in the original declaration of homestead filed by the bankrupt as a single man. During the first part of 1953, California Civil Code, § 1260, provided that homesteads might be selected and claimed by any head of a family to a value of $7,500, and by any other person to a value of $3,000. See California Statutes 1947, Chapter 1077, § 1, and California Statutes 1949, Chapter 357, § 1. The California Legislature of 1953 amended this sec-

tion, see California Statutes 1953, Chapter 943, § 1, so as to increase the amounts to the sum of $12,500 and $5,000, respectively. The section thus amended became effective on September 9, 1953. The bankrupt sought an exemption of $12,500 on the basis of his amended declaration of homestead and the California laws actually in effect at the time the declarations were filed.

The Referee, after considering the bankrupt's claim, entered an order "adjudging the first declaration of homestead recorded December 22nd, 1953, to be valid and effective; the amended or second declaration of January 13th, 1954, to be invalid; and the value of the exemption under Section 1260, Civil Code as it read when some of the debts were incurred to be $3,000.00 in actual cash value, over and above all liens and encumbrances." It is the portion of the Referee's order just set forth in quotes which the bankrupt has petitioned this Court to review. The bankrupt in his petition raises two questions. They are:

I. Did the Referee err in holding the "Amended Declaration of Homestead" invalid?

II. Did the Referee err in restricting to the sum of $3,000 the value of the exemption allowed to the bankrupt?[1]

No law bearing directly on the first point has been cited and none has been found. This, therefore, appears to be a question of first impression which was posed to the Referee, and which has now been brought here for review. There being an absence of statutory or case authority to guide this Court, the problem must be solved by reviewing the general principles of law, which are applicable, and then going forward to a conclusion which is logical, reasonable and just.

■ Certain basic precepts are discernible from the cases construing the homestead provision of the California Civil Code, §§ 1237–1269, which lead to the inescapable conclusion that a greater exemption cannot be effectuated by the process of filing an amended declaration of homestead. It is fundamental that there can be but one declaration of homestead by a claimant, or by those in whose behalf the declaration is made, § 1263, California Civil Code; Waggle v. Worthy, 74 Cal. 266, 15 P. 831; Gambette v. Brock, 41 Cal. 78; Strangeman v. Duke, 140 Cal.App.2d 185, 295 P.2d 12. It would seem to follow from this rule as a matter of plain logic that before the claimant may declare a second homestead on the same property, or even a different parcel of property, the first homestead must in some manner be terminated, otherwise the attempted second declaration will be a nullity. Section 1243 of the California Civil Code sets forth the methods by which a homestead may be abandoned, that is, by grant, or by the filing of a declaration of abandonment. The cases make it clear that the statutory method of abandonment must be strictly complied with. In re Teel's Estate, 34 Cal.2d 349, 210 P.2d 1; 26 Cal.L.Rev. 466, 477. It is likewise clear that abandonment cannot be effectuated by the mere filing of a new declaration of homestead. See: Waggle v. Worthy, supra.

■ Petitioner contends that an analogy to the problem here under consideration can be found in that line of cases which lays down the rule that on the death of either the husband or the wife, property subject to a marital homestead vests in the surviving spouse, and in order for the homestead exemption to reattach to the property upon a subsequent marriage of the surviving spouse, a new declaration of homestead on the property must be made for the benefit of the second community. Estate of Clavo, 6 Cal.App. 774, 93 P. 295; Zanone v. Sprague, 16 Cal.App. 333, 116 P. 989 [applying the same rule where there is a divorce]; In re Estate of Wrenn, 61 Cal.App. 602, 215 P. 909; Vieth v. Klett, 88 Cal.App.2d 23, 198 P.2d 314; and In re Estate of

---

[1]. For the record there is no doubt that there were creditors within the meaning of § 70, sub. c of the Bankruptcy Act, 11 U.S.C.A. § 110, sub. c, in existence prior to the amendment of California Civil Code, § 1260, in 1953.

Ronayne, 104 Cal.App.2d 53, 231 P.2d 105. In those cases, however, it was decided that the rule, requiring abandonment before a second declaration of homestead can be valid, is not involved, because the title to the property "changed hands" [That is, it is subjected to what is tantamount to a grant.] by operation of law, § 663, California Probate Code, formerly § 1474 of the California Code of Civil Procedure. See: Estate of Clavo, supra, and In re Estate of Wrenn, supra. It is only in this limited situation that a second declaration of homestead by a party may be considered valid without a formal abandonment of a previous declaration of homestead by that person. Even the courts have been denied the power of judicially amending a homestead declaration where the statutory prerequisites have not been satisfied. See: Carey v. Douthitt, 140 Cal.App. 409, 35 P.2d 632. Hence it must follow a fortiori that a claimant is similarly denied such a power.

However desirable it may be that the law should be otherwise, the fact remains that neither the California Legislature, nor the courts of that state, have seen fit to treat this issue in the fashion which the bankrupt would have this Court treat

it. Only legislation could give the bankrupt the relief he seeks, and this is a function which this Court does not have. See: In re Shear, D.C., 139 F.Supp. 217.

To summarize on this point, it seems patently obvious from a review of the general principles that are helpful and a rational consideration of the problem, that there is no analogy to be drawn here from the rule laid down in Estate of Clavo, supra. To hold otherwise would do violence to the doctrine of *stare decisis*, or force this Court to resort to the forbidden path of judicial legislation. Such being the case, it is the view of this Court that the Referee was correct when he decided that the amended declaration of homestead filed by the bankrupt was a nullity, and the first declaration of homestead recorded December 22, 1953, is valid and effective.

■ Turning next to the second point raised by the bankrupt, there is no such dearth of authority as there was in connection with the bankrupt's first contention. In the recent case of England v. Sanderson, 9 Cir., 236 F.2d 641, it is pointed out that the Courts of the State of California, by decision, have set this issue at rest.[2] Neither the Referee

2. Even though I am obliged, just as the Court of Appeals of this Circuit was obliged, to follow the rule laid down in In re Rauer's Collection Co., 87 Cal.App. 2d 248, 196 P.2d 803, I feel constrained to observe that I do not approve the rule, and I do not understand the reasoning by which the Court in that case reached the conclusion that an increase in the amount of a homestead exemption can only apply to obligations incurred after the date on which the statute authorizing the increase became law. In laying down this rule, they do violence to the fundamental concept underlying the benign object of the homestead statute as it is laid down in Re Estate of Fath, 132 Cal. 609, at page 613, 64 P. 995, 997. It is there said:

"The object of all homestead legislation is to provide a place for the family and its surviving members, where they may reside and enjoy the comforts of home, freed from any anxiety that it may be taken from them against their will, either by reason of their own necessity

or improvidence, or *from the importunity of their creditors*." (Emphasis added.)

This same rule has been followed by the California Supreme Court in such recent cases as Estate of Kachigian, 20 Cal.2d 787, 128 P.2d 865, and Thorsby v. Babcock, 36 Cal.2d 202, 222 P.2d 863, so I assume it is still the humanitarian view of that Court. The Court in In re Rauer's Collection Co., supra, seeks to justify the rule, which is there laid down, under the impairment of the obligation of contracts rule. The Court relies heavily on the rule that has grown up in the increase of exemption cases where the writ of execution is concerned. The conclusion reached in those cases is also sought to be justified by the sanctity of contracts rule, which, of course, arose under the pronouncements of the Supreme Court of the United States in the famous Dartmouth case, Trustees of Dartmouth College v. Woodward, 4 Wheat. 518, 17 U.S. 518, 4 L.Ed. 629. One only has to be realistic to realize that

nor I have any choice in this matter. We are bound to follow the rules that are laid down for our guidance. Since the Referee did adhere to those rules strictly, it follows that he correctly decided that the value of the exemption to be allowed to the bankrupt must be fixed at $3,000 in actual cash value.

It Is, Therefore, Ordered that the order of the Referee determining exempt property be, and the same is, hereby approved and confirmed.

this rule has been gradually eroded away over the years by judicial attrition. Whenever a Court has felt what it believed to be the pangs of justice gnawing at it, the Court has had little difficulty in finding an escape from the sanctity of contracts rule. As a matter of fact, it may be fairly said that the exceptions have, for all practical purposes, consumed the rule. Some examples of what I have in mind are the "Gold Clause" cases, See: Norman v. Baltimore & O. R. Co., 294 U.S. 240, 55 S.Ct. 407, 79 L.Ed. 885; Nortz v. United States, 294 U.S. 317, 55 S.Ct. 428, 79 L.Ed. 907; and Perry v. United States, 294 U.S. 330, 55 S.Ct. 432, 79 L.Ed. 912; the cases holding that a consumer's contract with a public utility can be modified, even annulled, by the subsequent exercise of the state's regulatory power, See: Limoneira Co. v. Railroad Commission, 174 Cal. 232, 162 P. 1033; Law v. Railroad Commission, 184 Cal. 737, 195 P. 423, 14 A.L.R. 249; Sutter Butte Canal Co. v. Railroad Commission, 202 Cal. 179, 259 P. 937; and Lamb v. California Water & Telephone Co., 21 Cal.2d 33, 129 P. 2d 371; and those very recent cases where it is held that attorneys and executors in probate proceedings are to be paid on the basis of a new law increasing fees after the services were performed. See: Estate of Johnston, 47 Cal.2d ——, 303 P.2d 1. Furthermore, how can the sanctity of contracts rule logically control here? Is it not a fact that practically every bankruptcy proceeding impairs the obligation of the contract insofar as the unsecured creditors are concerned?

If the homestead rule makes any sense at all, it ought to be flexible enough to allow the value of the homestead to keep pace with the times, and thus in reality, and not in mere fiction, grant the debt ridden and proverty stricken the "comforts of home". See: 26 Cal.L.Rev. 466 at 471, and 1 Stanford L.Rev. 350.

Not only is there, in my opinion, a moral issue here, but it seems to me that the rule as it is now developing leads us through such a legal maze that we do not always end up at the same place, even though we may try our best to follow the directions given us. Judge Murphy had trouble in In re Sanderson, D.C., 134 F.Supp. 484 (which was reversed by England v. Sanderson, cited in the main text), and Judge Hastie points out other anomalies in Sampsell v. Straub, 9 Cir., 194 F.2d 288, which was twice before the Court of Appeals. See: 9 Cir., 189 F.2d 379. Over and beyond all of this, I can conceive of a situation where an unsecured creditor, having a claim of no more than $1.00 incurred prior to the day on which the legislation increasing the exemption became effective, could, under § 70, sub. c of the Bankruptcy Act, 11 U.S.C.A. § 110, sub. c, and the rule laid down in Moore v. Bay, 284 U.S. 4, 52 S.Ct. 3, 76 L.Ed. 133, and similar cases, carry with him a host of unsecured creditors, all of whom dealt with the bankrupt after the effective date of the increase legislation. A minimum creditor could thus, in such a case as the Sanderson case, supra, take from the bankrupt $5,000, which the Legislature of the State of California has said is necessary in order to insure the bankrupt a home. Such a situation shocks my sense of justice and fair play.

It appears to me that the rule, as it now stands, can make it possible to take from the bankrupt, and deliver over to certain of his creditors, property which they could not otherwise reach, and which under the homestead law they are neither legally nor morally entitled to reach. At the same time, the rule strikes at the fundamental concepts of the homestead law, which, as I conceive it, is designed to give our people as a whole a better way of life. Unfortunately, it appears that nothing short of legislation can at this late date correct this situation, but I for one believe that it ought to be corrected.

All that I have here said is designed solely to justify the critical view which I have expressed above. There is no purpose behind the discussion, other than that something constructive may come from it.