WILKINSON et ux, *Appellants,*

*v.*

CARPENTER et al, *Respondents.*

(No. 414-252, SC 24506)

561 P2d 607

Warren C. Deras, Portland, argued the cause and filed a brief for appellant.

Mark M. McCulloch of Powers & McCulloch, Portland, argued the cause and filed a brief for respondent.

Before Denecke, Chief Justice, and Howell, Lent, and Bradshaw, Justices.

HOWELL, J.

## HOWELL, J.

Plaintiffs filed a motion for an order setting the amount of the homestead exemption claimed by defendants in certain real property which was subject to execution in satisfaction of plaintiffs' prior judgment against defendants.[1] After a hearing, the court set the amount of the homestead exemption at $12,000. Plaintiffs appeal, claiming that the amount of the allowable homestead exemption should have been set at $7,500, as provided in ORS 23.240 as of the date of the prior judgment, rather than at $12,000 as provided by the same statute as amended effective September, 1975.

The facts are not in dispute. On August 6, 1975, a decree was entered granting plaintiffs a judgment against defendants for sums exceeding $155,000. The obligation giving rise to this judgment was a contract entered into between plaintiffs and defendants on October 6, 1973. On September 13, 1975, the statute increasing the homestead exemption to $12,000 became effective. On January 6, 1976, a writ of execution was levied upon defendants' real property. On January 21, 1976, defendants filed a notice of claimed homestead exemption. On February 10, 1976, the property was sold to plaintiffs on execution for $140,000. The next day plaintiffs filed their motion for an order setting the amount of the homestead exemption.

On appeal from the order entered on their motion, plaintiffs contend that the statute increasing the homestead exemption to $12,000 should not be construed to apply to an execution on a judgment entered prior to its effective date, and that if the statute is construed to apply to such a judgment, it would be an unconstitutional impairment of the obligation of contracts under Article I, Section 10, of the United States Constitution.

---

[1] *See Wilkinson v. Carpenter,* 276 Or 311, 554 P2d 512 (1976).

The applicable part of the statute increasing the homestead exemption provided as follows:

"Section 5. ORS 23.240 is amended to read:

"23.240(1) A homestead shall be exempt from sale on execution, from the lien of every judgment and from liability in any form for the debts of the owner to the amount in value of [$7,500] $12,000, except as otherwise provided by law. When two or more members of a household are debtors whose interests in the homestead are subject to sale on execution, the lien of a judgment or liability in any form, their combined exemptions under this section shall not exceed $12,000. The homestead must be the actual abode of and occupied by the owner, his spouse, parent or child, but such exemption shall not be impaired by:

"(a) Temporary removal or temporary absence with the intention to reoccupy the same as a homestead;

"(b) Removal or absence from the property; or

"(c) The sale of the property.

"(2) The exemption shall extend to the proceeds derived from such sale to an amount not exceeding [$7,500] $12,000 held, with the intention to procure another homestead therewith, for a period not exceeding one year." Oregon Laws 1975, ch 208, § 5. (New material underscored; old material in brackets.)

This court has previously noted that the homestead statute should be liberally construed in favor of the debtor's exemption. *See, e.g., Fleischhauer v. Bilstad, et al, Gray et ux,* 233 Or 578, 591, 379 P2d 880 (1963). Under the terms of the statute, the judgment debtor's homestead is "exempt from sale on execution," but the exemption is not automatic and must be affirmatively asserted before the sale or it is lost. *See* ORS 23.270. *Compare* ORS 23.170. Since the exemption applies to the sale on execution and may be asserted at any time prior to such sale, it would appear that the appropriate time to measure the value of the exemption would be the time of the sale on execution.

■ In this case, the statute increasing the exemption became effective on September 13, 1975. Notice of defendants' homestead exemption claim was filed on

January 21, 1976, and the execution sale took place on February 10, 1976. Under the terms of the statute in effect at that time, defendants were entitled to a homestead exemption of $12,000.

Plaintiff also contends that an application of the increased exemption to an obligation arising under a pre-existing contract would impair the obligation of that contract in violation of Article I, Section 10, of the U.S. Constitution. That section provides that "No state shall * * * pass any * * * law impairing the obligation of contracts." *See also* Oregon Constitution, Art I, § 21.

Early decisions of the United States Supreme Court often applied the contract clause rigidly to state statutes which made any significant change either in the obligations of pre-existing contracts or in the underlying remedies. *See, e.g., Gunn v. Barry,* 82 US (15 Wall) 610, 21 L Ed 212 (1873); *Edwards v. Kearzey,* 96 US 595, 24 L Ed 793 (1878); *Bank of Minden v. Clement,* 256 US 126, 41 S Ct 408, 65 L Ed 857 (1921).[2]

In *Edwards v. Kearzey, supra,* the Supreme Court held that a state statute which doubled the homestead exemption by raising it from $500 to $1,000 was unconstitutional as an impairment of the obligation of contracts as applied to liabilities incurred on contracts executed prior to the statute. However, we do not believe that the same conclusion must necessarily follow in this case, because it is clear from our review

---

[2]However, during that same period, exceptions were increasingly carved out of the prohibition when laws passed in the exercise of the "police power" at least arguably impaired the obligations or the remedies of pre-existing contracts in the furtherance of the general health, safety and welfare of the people. *See, e.g., Northwestern Fertilizing Co. v. Hyde Park,* 97 US 659, 24 L Ed 1036 (1878); *Stone v. State of Mississippi,* 101 US 814, 25 L Ed 1079 (1880); *Atlantic Coast Line R. Co. v. Goldsboro,* 232 US 548, 34 S Ct 364, 58 L Ed 721 (1914). These decisions foreshadowed the shift that later developed toward a more flexible interpretation of the contract clause.

For a general discussion of the use of the term "police power" see Linde, *Without "Due Process,"* 49 Or L Rev 125, 146-58 (1970).

of the more recent Supreme Court decisions in this area that the Court's interpretation of the contract clause has changed significantly since 1878.

In *Home Building & Loan Ass'n v. Blaisdell*, 290 US 398, 54 S Ct 231, 78 L Ed 413 (1934), the Court conducted a complete re-examination of the contract clause and concluded that "the prohibition is not an absolute one and is not to be read with literal exactness like a mathematical formula." 290 US at 428. The *Blaisdell* Court upheld a state moratorium on mortgage foreclosure sales during the depression years despite the fact that the performance of existing contracts would be frustrated by that moratorium. This was a significant departure from past decisions, and it marked the beginning of a new era in the interpretation of the contract clause. *See generally* G. Gunther, Constitutional Law 611 (9th ed 1975).

In its most recent discussion of the contract clause, the Supreme Court described the *Blaisdell* case as follows:

"* * * The *Blaisdell* opinion, which amounted to a comprehensive restatement of the principles underlying the application of the Contract Clause, makes it quite clear that '[n]ot only is the constitutional provision qualified by the measure of control which the State retains over remedial processes, but the State also continues to possess authority to safeguard the vital interests of its people. It does not matter that legislation appropriate to that end "has the result of modifying or abrogating contracts already in effect." *Stephenson v. Binford,* 287 U.S. 251, 276. Not only are existing laws read into contracts in order to fix obligations as between the parties, but the reservation of essential attributes of sovereign power is also read into contracts as a postulate of the legal order . . . . This principle of harmonizing the constitutional prohibition with the necessary residuum of state power has had progressive recognition in the decisions of this Court.' 290 U.S., at 434-435. Moreover, the 'economic interests of the State may justify the exercise of its continuing and dominant protective power notwithstanding interference with contracts.' *Id.,* at

437 * * *." *El Paso v. Simmons,* 379 US 497, 508, 85 S Ct 577, 13 L Ed 2d 446 (1965).

In an earlier decision, *East New York Bank v. Hahn,* 326 US 230, 232, 66 S Ct 69, 90 L Ed 34 (1945), Justice Frankfurter also reviewed the *Blaisdell* case, as well as subsequent decisions which had considered the contract clause, and he concluded that those cases

> "* * * yield this governing constitutional principle: when a widely diffused public interest has become enmeshed in a network of multitudinous private arrangements, the authority of the State 'to safeguard the vital interests of its people,' 290 U.S. at 434, is not to be gainsaid by abstracting one such arrangement from its public context and treating it as though it were an isolated private contract constitutionally immune from impairment."

Quoting *Manigault v. Springs,* 199 US 473, 26 S Ct 127, 50 L Ed 274 (1905), Justice Frankfurter then went on to add that

> "the power 'which in its various ramifications is known as the police power, is an exercise of the sovereign right of the Government to protect the . . . general welfare of the people, and is paramount to any rights under contracts between individuals.' 199 U.S. at 480. Once we are in this domain of the reserve power of a State we must respect the 'wide discretion on the part of the legislature in determining what is and what is not necessary.' *Ibid.* So far as the constitutional issue is concerned, 'the power of the State when otherwise justified,' Marcus Brown Co. v. Feldman, 256 U.S. 170, 198, is not diminished because a private contract may be affected." 326 US at 232-33.

Therefore, it seems plain that the dictates of the contract clause can no longer be viewed in the same absolute terms which prevailed in earlier times. Modern decisions point out that the prohibition of the contract clause must be balanced against or "harmonized" with the legislative powers reserved to the states:

> "* * * [W]hatever is reserved of state power must be consistent with the fair intent of the constitutional

limitation of that power. *The reserved power cannot be construed so as to destroy the limitation, nor is the limitation to be construed to destroy the reserved power in its essential aspects. They must be construed in harmony with each other.* This principle precludes a construction which would permit the State to adopt as its policy the repudiation of debts or the destruction of contracts or the denial of means to enforce them * * *." *Home Building & Loan Ass'n v. Blaisdell, supra* 290 US at 439. (Emphasis added.)

*Accord El Paso v. Simmons, supra,* 379 US at 509. *See also Cuyahoga Met. Housing Auth. v. Cleveland,* 342 F Supp 250, 254 (ND Ohio 1972) ("This standard when distilled to its essence is one of reasonableness, or a balancing test.") Pursuant to this modern, more flexible approach, state legislation which reflects "the use of reasonable means to safeguard the economic structure upon which the good of all depends," does not violate the contract clause for "the reservation of the reasonable exercise of the protective power of the State is read into all contracts." *Home Building & Loan Ass'n v. Blaisdell, supra,* 290 US at 442, 444. Under this standard, the real issue is "whether the legislation is addressed to a legitimate end and the measures taken are reasonable and appropriate to that end." *Id.* at 438. *See also El Paso v. Simmons, supra,* 379 US at 509:

" 'It is the motive, the policy, the object, that must characterize the legislative act, to affect it with the imputation of violating the obligation of contracts.' " (*Quoting Ogden v. Saunders,* 25 US (12 (Wheat) 213, 219, 6 L Ed 606 (1827).)

*See generally* Hale, *The Supreme Court and the Contract Clause: III,* 57 Harv L Rev 852, 880-84 (1944).

The legislative act in question in this case provided for an increase in the homestead exemption from $7,500 to $12,000. It has been said that the purpose of such exemptions

" 'is to provide a place for the family and its surviving members, where they may reside and enjoy the comforts of home, freed from any anxiety that it may be taken

[ 564 ]

from them against their will, either by reason of their own necessity or improvidence, or *from the importunity of their creditors.'*

"* * * * *.

"If the homestead rule makes any sense at all, it ought to be flexible enough to allow the value of the homestead to keep pace with the times, and thus in reality, and not in mere fiction, grant the debt ridden and poverty stricken the 'comforts of home.'" *In re Towers,* 146 F Supp 882, 885-86, n. 2 (ND Cal 1956), *quoting In re Fath's Estate,* 132 Cal 609, 613, 64 P 995 (1909). (Emphasis in 146 F Supp at 885)

■ The creation of such exemptions is certainly a proper subject for legislative action. The purpose is not only to insure indigent individuals the comforts of home, but also to protect the general economic welfare of all citizens, creditors and debtors alike, by promoting the stability and security of our society. Periodic increases in such exemptions reflect similar considerations. As the Louisiana Supreme Court recently noted when considering a statutory increase in the garnishment exemption:

"* * * When the state changed the remedy by increasing the exemption, it did not abrogate the remedy; it did not make the remedy any less certain than it was at the time of the contract; it simply in the interest of public welfare increased the debtor's exemption so that he and his family might be saved from being a charge upon the state." *Hooter v. Wilson,* 273 So 2d 516, 522 (La 1973).

Undoubtedly, any increase in the statutory homestead exemption may impair the value of some pre-existing contracts, at least indirectly, by exempting additional assets from execution and thereby restricting the remedy available for breach. However, if the statutory remedy of sale on execution, ORS 23.410 *et seq.,* is to be read into the contract between the plaintiff and the defendant, the reserved power of the state to increase the statutory exemptions for the protection and welfare of its people must also be included. *El Paso v. Simmons, supra,* 379 US at 508; *Home Building & Loan Ass'n v. Blaisdell, supra,*

290 US at 434-35. So long as the increase is reasonable and does not destroy the value of the contract by destroying any meaningful remedy, it does not violate the contract clause. "In all such cases the question becomes, therefore, one of reasonableness, and of that the legislature is primarily the judge." 290 US at 430.

■ We conclude that any indirect contractual impairment which may have occurred as a result of the increased homestead exemption is not unconstitutional since the increase was reasonable, and any impairment would not appear to be substantial when balanced against the governmental objective being pursued. *See El Paso v. Simmons, supra; Home Building & Loan Ass'n v. Blaisdell, supra. See also Koch v. Yunich,* 533 F2d 80, 86 (2d Cir 1976); *Minn. Gas Co. v. Public Service Comm'n,* 523 F2d 581, 584 (8th Cir 1975), *cert. denied* 424 US 915 (1976); *Guest v. Fitzpatrick,* 409 F Supp 818, 822-24 (ED Pa 1976); *Jamaica Savings Bank v. Lefkowitz,* 390 F Supp 1357, 1360-362 (ED NY) *aff'd* 423 US 802 (1975); *Aerojet-General Corp. v. Askew,* 366 F Supp 901, 906-08 (ND Fla 1973), *aff'd* 511 F2d 710 (5th Cir), *cert. denied* 423 US 908 (1975); *Cuyahoga Met. Housing Auth. v. Cleveland, supra* at 253-59; *California Teach. Assn. v. Newport Mesa Unified Sch. Dist.,* 333 F Supp 436, 443-44 (CD Cal 1971); *Hooter v. Wilson, supra* at 520-22.

Moreover, in our view, this result is not necessarily inconsistent with the conclusion reached by the Court in *Edwards v. Kearzey,* supra. The doubling of the exemption in that case from $500 to $1,000 may well have "so affect[ed] that remedy as substantially to impair and lessen the value of the contract" under the economic conditions existing in 1878. 96 US at 607. Indeed, the concurring opinions in *Edwards* specifically distinguished the statute before that Court from statutes directing " 'that the necessary implements of agriculture, or the tools of a mechanic, or articles of necessity in household furniture, shall, like wearing apparel, be not liable to execution on judgments.' " 96 US at 610, *quoting Bronson v. Kinzie,* 42 US (1 How)

311, 315 (1843). In their view, the exemption provided in the case before them was "so large, that, in regard to the mass of contracts and the situation and circumstances of debtors as they are ordinarily found to exist, it would seriously affect the efficiency of remedies for the collection of debts, and that it must, therefore, be held to be void." 96 US at 611. *See also* 96 US at 608.

Like the Supreme Court's interpretation of the contract clause, economic conditions have changed substantially since 1878. In our view, the legislature's action in increasing the homestead exemption from $7,500 to $12,000 was not unreasonable in light of current economic conditions, and certainly the increase was not "so large, that * * * it would seriously affect the efficiency of remedies for the collection of debts."

Affirmed.