[Civ. No. 13765. First Dist., Div. One. Aug. 20, 1948.]

In re RAUER'S COLLECTION CO., INC. (a Corporation), for Appointment of Appraisers. RAUER'S COLLECTION CO., INC. (a Corporation), Appellant, v. CLAUDE C. HIGGINS et al., Respondents.

Jerome L. Schiller for Appellant.

Frank V. Kington for Respondents.

BRAY, J.—The superior court made an "Order Denying Petition to Levy Execution on Homestead" in a proceeding brought under the provisions of sections 1245 to 1258, inclusive, of the Civil Code. The petitioner therein appeals. The questions raised concern the effect of a certain declaration of homestead upon the property of respondents, who at all times herein mentioned were, and are, husband and wife.

In 1937, respondents Claude C. Higgins and Anna Higgins purchased with community funds certain real property in San Mateo County. The deed, dated July 28, 1937, and recorded December 4, 1937, conveyed the property to them as *joint tenants,* with the right of survivorship. Thereafter and on August 14, 1939, both respondents signed, and on August 15th recorded, a declaration of homestead on this property. The declaration states that Claude Higgins and Anna Higgins are husband and wife; that Claude is the head of a family, consisting of himself, his said wife, and their three minor children, all actually residing on the land (describing it) ; that it

is their intention to use it as a home, and that they claim it, together with the dwelling house thereon, as a homestead; that the actual cash value of the premises is estimated to be $4,500; and that all of it is necessary for the use and enjoyment of the homestead; "That the character of said property sought to be homesteaded is as follows: That the said real property is *the Community property in Joint-Tenancy* of the Declarants. . . ." (Emphasis added.) No attack is made upon the validity of the declaration.

In 1940, petitioner, on an assigned claim, brought suit in the Superior Court of San Mateo County against respondent Claude Higgins. On December 10, 1945, judgment for approximately $950 was rendered in favor of petitioner and against Claude. On appeal to this court, the judgment was affirmed.[1] On February 6, 1946, an abstract of the judgment was recorded in San Mateo County, and on July 16, 1947, execution was levied by the sheriff on the homesteaded property. The same day, petitioner, pursuant to the provisions of section 1245 of the Civil Code, applied to the superior court for the appointment of appraisers to value the property. Respondent Anna Higgins appeared and answered the petition, setting forth that she was not a party to the judgment; that the property was held in joint tenancy by her and Claude; that its value was less than $6,000; that it could not be divided without material injury to it; and asked that the petition be denied.

The court duly appointed three appraisers. On September 23, 1947, their reports were filed. They found that there were no liens or encumbrances of record and that the property could not be divided without material injury. No challenge of these findings is made. Two of the appraisers valued the property at $5,850, the third at $4,775. On September 29th, petitioner moved the court to adopt the majority report of the appraisers and to direct a sale of the property under the writ of execution. This motion was resisted by respondent Anna. The court, in its order, found that the property was held in joint tenancy and "that the actual cash value of said real property is less than $6000." It then denied the petition.

#### AMOUNT OF EXEMPTION

The first question to be determined is the amount of homestead exemption to be allowed. In 1939, when the homestead was declared, section 1260 of the Civil Code provided that

[1] (*Bauer's Law etc. Co.* v. *Higgins*, 76 Cal.App.2d 854 [174 P.2d 450].)

the homestead exemption of the head of a family was $5,000 over liens and encumbrances at the time of any levy. In 1945, section 1260 was amended to allow an exemption of $6,000. Respondents contend, and the court apparently agreed, that the exemption to be applied is that of the date of recording the abstract of judgment, or $6,000. Petitioner contends that it is that of the date of incurring the indebtedness. The record on this appeal fails to disclose the date of the incurring of the indebtedness upon which this litigation is based. However, in the record before this court in the former appeal (see footnote, p. 324) of which record this court may take judicial notice, the trial court found that an account was stated between the parties on June 2, 1939. At that time, as well as at the time of recording the declaration and in fact ever since 1872, the amount of homestead exemption for the head of a family was $5,000.

The question of the effect as to creditors then existing of an increase in the amount of the statutory homestead exemption has not been passed upon heretofore in this state. In the case of *Cohen* v. *Davis,* 20 Cal. 187, the court was considering the effect of an amendment in 1860 of the homestead laws of 1851. It held that to avail himself of the provisions of the later act it was necessary for an owner who had previously filed a declaration of homestead to file a new one after the 1860 act took effect, and that as the owner had failed to file such new declaration, his rights were measured by the earlier act. *Gluckauf* v. *Bliven,* 23 Cal. 312, is to the same effect. The holdings in both cases, however, are based upon the express wording of the act, which, in effect, stated that all persons holding homesteads had one year in which to file the new declaration of homestead provided by the act.

In *McNabb* v. *Byrnes,* 92 Cal.App. 337 [268 P. 428], the court was considering a complaint based upon a declaration of homestead made in 1922. Objection was made that the declaration did not contain a statement that no former declaration of homestead had been made by the parties. In 1927, section 1263 of the Civil Code had been amended providing a new subdivision (5) which permitted such a statement to be made in the declaration. After holding that this was not a mandatory requirement, the court held that subdivision (5), which had been added after the declaration of homestead had been recorded, was "not retroactive in its effect." (P. 342.)

■ That the increase in exemption cannot be given a retroactive interpretation, as it would be an impairment of the obligation of contracts, and that the creditor is entitled to rely upon the exemption statutes as of the time the obligation was incurred, is well established. *Medical Finance Assn.* v. *Wood,* 20 Cal.App.2d Supp. 749 [63 P.2d 1219], and *Smith* v. *Hume,* 29 Cal.App.2d Supp. 747 [74 P.2d 566], dealt with the enactment in 1935 of section 690.24 of the Code of Civil Procedure, making a motor vehicle of a value less than $100 exempt from execution. No such exemption had theretofore existed. In both cases it was held that to give a retroactive effect to this statute would be in violation of the state and federal Constitutions, as it would impair the obligation of contracts.

In *The Queen,* 93 F. 834, it was held that a California statute exempting from execution seamen's wages not exceeding $100, ''as applied to previous contracts made with seamen, at a time when no such exemption is allowed, would materially lessen and impair the obligation of such contracts.'' (P. 837.) See also *In re Fox,* 16 F.Supp. 320, and Waples on Homestead and Exemption (1892), pp. 227-229.

'' 'It is settled that every statute will be construed to operate prospectively unless the legislative intent to the contrary is clearly expressed. . . . The rule that a statute is presumed to operate prospectively only, unless an intent to the contrary clearly appears, is especially applicable to cases where retroactive operation of the statute would impair the obligations of contracts or interfere with vested rights.' (*Jones* v. *Union Oil Co.* (1933), 218 Cal. 775, 777, 778 [25 P.2d 5, 6] ; to same effect *People* v. *Allied Architects Assn.* (1927), 201 Cal. 428, 437 [257 P. 511].) . . .

''But even if a retroactive intent can be found in the statute, the application of the new exemption to executions issued on judgments based on preexisting contracts is prevented by the provisions of the Constitutions of the United States (art. I, sec. 10) and of California (art. I, sec. 16), forbidding laws impairing the obligation of contracts. . . . Statutory provisions creating new, or increasing old, exemptions have been considered several times by the United States Supreme Court, and it has uniformly held that their application to executions based on preexisting contracts would violate the provision of the federal Constitution above referred to. (*Gunn* v. *Barry* (1873), 15 Wall. 610 [21 L.Ed. 212] ; *Edwards* v. *Kearzey*

(1878), 96 U. S. 595 [24 L.Ed. 793] ; *Bank of Minden* v. *Clement* (1921), 256 U. S. 126 [41 S.Ct. 408, 65 L.Ed. 857] ; *W. B. Worthen Co.* v. *Thomas* (1934), 292 U. S. 426 [54 S.Ct. 816, 78 L.Ed. 1344, 93 A.L.R. 173].)'' (*Medical Finance Assn.* v. *Wood, supra* [20 Cal.App.2d Supp. 749, 750, 751].)

''While it is competent for the legislature to change the form of remedy, if it can do so without impairing the obligation of contract, a statute increasing the exemption of debtors is void to the extent that it is applicable to contracts made prior to its enactment.'' (12 Cal.Jur., p. 333.)

93 American Law Reports, page 178 states that ''the now generally accepted view'' is that the remedy is inseparable from the contract itself, and contracts not reduced to judgment are held to be substantially impaired by the authorization of a new or increased exemption.

█ As a prospective and not a retroactive interpretation must be given to the 1945 amendment to section 1260, it is obvious that the exemption to which respondents are entitled is that which was in existence at the time of the creation of the debt upon which the judgment is founded, namely, $5,000.

Mention is made by respondents of the amendment of section 1260 in 1947, raising the homestead exemption to $7,500. This, like the 1945 amendment, cannot be given a retroactive effect so far as petitioner is concerned.

In holding that the amendment is not retroactive, we expressly are not holding, as petitioner would have us do, that to avail themselves of the increased exemption as to debts created, or contracts entered into, after the effective date of the amendment, it is necessary for the property owners who theretofore filed declarations of homestead to file new declarations.

### Appraiser's Report

The property cannot, be sold unless the court finds from the appraiser's report that the land exceeds in value the sum of $5,000. (Civ. Code, § 1254.) Here the court did not find the actual value of the property, merely finding that it is worth less than $6,000. Two of the appraisers valued the property at $5,850, which is more than the exemption. One appraiser valued it at $4,775, which is less than the exemption.

█ It was the duty of the court to determine the value *from the report.* (Civ. Code, § 1254.) In considering the adoption by the court of an appraiser's report made pursuant to the provisions of section 1252, Civil Code, without hearing on the report, the court in *Lean* v. *Givens,* 146 Cal. 739, at page

743 [81 P. 128, 106 Am.St.Rep. 79], said: "The code does not require any notice or hearing after the report of the appraisers is filed. It seems to contemplate that the order for a sale, where the report is that the land cannot be divided, or for a partition, if it is divisible, is to be made by the court, *ex parte,* from an inspection of the report alone. Section 1254 provides that 'If, *from the report,* it appears to the judge that the land claimed exceeds in value the amount of the homestead exemption, and that it cannot be divided, he must make an order directing its sale under the execution.' " As the court failed to determine the value of the property, it is necessary that the case be referred to the court to fix such value "from the report." As the appraisers did not agree in their reports, it is possible that, although the code does not expressly provide such procedure, the court could hear evidence and from such evidence and the reports determine the value of the property. In *Stockton Sav. & Loan Bank* v. *Mello,* 201 Cal. 194 [256 P. 202], it was held that although there is no express provision for taking testimony concerning values at the hearing of the petition for appointment of appraisers, the court could take such testimony and could even determine value adversely to the petitioner. If the court has the power to do this without express statutory provision, and if, as set forth in *Brown* v. *Starr,* 75 Cal. 163 [16 P. 760], in the absence of statutory provision, it may provide the machinery to carry into effect a later report, it would follow that the court has the power, where the appraisers do not agree on values, to take testimony to enable the court to make the required finding. Or, if the court is dissatisfied with the reports before it, it has the right under its general powers to require that a new appraisement be made. In *Brown* v. *Starr, supra* [75 Cal. 163], the appraisers reported that the homesteaded land could be divided without material injury. The court remanded the matter to the appraisers to make the division. The statute made no express provision requiring that the report of the division be confirmed, or even that any report be made. The Supreme Court held that it was a proper case for the lower court to supply the necessary machinery to put the report into effect, and went on to say (p. 166): ". . . the proper course is for the appraisers to report their action as to the division, and for such report, after reasonable notice, to be confirmed if satisfactory to the court, and if not satisfactory, a third reference to be ordered, and so on until a report is obtained

which is confirmed . . ." By analogy, the court here should either find the value of the property from the report already submitted, plus evidence if desired, and if it finds the value in excess of the exemption, order it sold, or, as said in the Brown case, if not satisfactory, refer the matter back to the appraisers for another valuation.

## JOINT TENANCY OR COMMUNITY PROPERTY

█ This brings us to the question of whether the property is held by the parties in joint tenancy or is their community property. This becomes important for the reason that if it is held in joint tenancy, as the wife's interest is not liable for the husband's debts,[1] the creditor is entitled to levy upon half the value over the exemption, while, if it is community property, the community being liable for the husband's debts,[2] the creditor is entitled to levy upon the entire interest over the exemption. █ The trial court found that the property was held in joint tenancy. If there is substantial evidence to support the finding we must affirm the court's action.

3 California Jurisprudence Ten-Year Supplement, page 573, section 75, states: "The sufficiency of the evidence is generally a matter for the trial court or jury, and the findings or verdict will not lightly be set aside. Following the general rule, a finding of a trial court that property is either separate or community in character is binding and conclusive upon the appellate court, if it is supported by sufficient evidence, or if it is based on conflicting evidence or upon evidence that is subject to different inferences. . . . Clearly, the determination of the trial court that the presumption has been overcome will not be disturbed on appeal if there is a substantial conflict in the evidence, or, although there is no conflict, if different inferences might fairly be drawn from the evidence. It is finally in each case a question of fact for the court or jury to determine whether the evidence is sufficient to overcome the presumption."

The deed of the property was to husband and wife in joint tenancy. "When property is conveyed to a husband and wife as joint tenants the form of the conveyance is such as to destroy the statutory presumption that the property is community (*Siberell* v. *Siberell*, 214 Cal. 767 [7 P.2d 1003]),

---

[1] Civ. Code, § 171.

[2] 3 Cal.Jur. 10-Yr. Supp. 663; *Lesser* v. *Pomin*, 3 Cal.App.2d 117 [39 P.2d 451].

and that thereby such deed creates a joint tenancy in which the interests of husband and wife are separate property. (*Young* v. *Young,* 126 Cal.App. 306 [14 P.2d 580].)'' (*Launer* v. *Griffen,* 60 Cal.App.2d 659, 664 [141 P.2d 236].) ''. . . a joint tenancy . . . is of necessity an expression of the intention to hold the property otherwise than as community property. . . .'' (*Siberell* v. *Siberell,* 214 Cal. 767, 773 [7 P.2d 1003].)

To overcome this presumption, petitioner relies upon two points: (1) that the property was admittedly purchased with community funds, and (2) the peculiar statement in the declaration of homestead, that it ''is the Community property in Joint-Tenancy of the Declarants.'' ▇ As to the first point, the fact that the property was purchased with community funds does not in itself overcome the presumption. Most joint tenancies of husband and wife are purchased with community funds, and as said in *Siberell* v. *Siberell, supra* [214 Cal. 767, 773], ''The use of community funds to purchase the property and the taking of title thereto in the name of the spouses as joint tenants is tantamount to a binding agreement between them that the same shall not thereafter be held as community property but instead as a joint tenancy with all the characteristics of such an estate.'' ▇ The question of whether the property remains community property depends upon the intention of the parties when they acquired it. (*Gilmour* v. *North Pasadena Land etc. Co.,* 178 Cal. 6 [171 P. 1066].) The form of the conveyance is itself some evidence of the intent to change it from community property, and creates a rebuttable presumption to that effect. (*Idem.,* p. 8; *Steere* v. *Darnet,* 54 Cal.App. 589, 591 [202 P. 166]; *Jansen* v. *Jansen,* 127 Cal.App. 294, 298 [15 P.2d 777].)

▇ Both husband and wife testified that they intended the property to be held in joint tenancy rather than as community property. Petitioner contends this testimony is inadmissible. In the case of *Thomas* v. *Hoffman,* 122 Cal.App. 213 [9 P.2d 538], the court upheld the rejection of evidence that when the land in question was purchased the husband and wife made statements to a third person to the effect that the land was bought for her as separate property, that prior thereto, when another property was sold, the proceeds were so divided between husband and wife that each took his share, and that the wife bought this property with the intent that it was to be her separate property. The court said (p. 217): ''The first

part of the offered proof was a self-serving declaration, and such a change from community to separate property is to be proved only by showing a definite present agreement to that effect. As to the second portion of the offer it was technically not sufficient, as no present positive agreement to that effect was offered to be proved, nor was it offered to be proved that the husband had any such intent.'' At first blush this language seems to support petitioner's contention. However, it is significant that the court indicated that ''a definite present agreement'' to make it separate property could be shown by the testimony of the wife. The ruling is based also on the failure to offer to show what the intent of the husband was. In the instant case, the intent of both husband and wife was shown.

Moreover, that the testimony of both husband and wife as to their intent in this respect is admissible, is shown in *Gilmour* v. *North Pasadena Land etc. Co., supra* [178 Cal. 6], where the court says (p. 9): ''The intent accompanying the act is to be inferred by the court or jury from all the circumstances, *and the party's own testimony that he did not intend to make a gift, while competent, is not conclusive.''* (Emphasis added.)

■ The second point relied upon by petitioner as proof that the property still retained its community aspect, is the phrase in the homestead declaration ''Community property in Joint-Tenancy.'' Just what that means is difficult to say. However, the real estate agent who prepared the declaration, testified that the language was his, and that he had not called the attention of the parties to that language. He was permitted to testify that he had been informed by an attorney that that was the way to draw a homestead on lands held in joint tenancy by husband and wife. If admission of his reason for drawing the instrument that way is error, it is without prejudice. The fact that he drew the declaration and did not direct the attention of the parties to it, was admissible on the question of the intent of the owners of the property as to its character.

■ The court had before it the presumption from the deed itself, that the property was being held in joint tenancy, and the testimony of the parties that they always so considered it. Against that evidence was the circumstance that it was purchased with community funds (although that circumstance was consistent either with the property being separate or community property, depending upon the intention of the parties) and the use of the words ''community

property'' in the declaration. We cannot say as matter of law that the court was not correct in its determination that the evidence was not sufficient to overcome the presumption established by the joint tenancy deed. We think this issue was correctly determined by the trial court. Although the order must be reversed, as will hereafter appear, this issue need not be retried.

HOMESTEADED JOINT TENANCY PROPERTY NOT ENTIRELY
EXEMPT FROM EXECUTION

Respondents contend that even the husband's interest in homesteaded joint tenancy property of husband and wife is exempt from execution on a judgment against the husband alone. That is not the law. ''It is well settled in this and other states that, while all joint tenants are alive, execution may be had upon the interest of one of the joint tenants, and that upon the purchase of the interest of that joint tenant at execution sale the joint tenancy is severed and the purchaser and the other joint tenant or tenants become tenants in common. (See cases collected and commented on in 111 A.L.R. 171; *Pepin* v. *Stricklin*, 114 Cal.App. 32 [299 P. 557]; *Hilborn* v. *Soale*, 44 Cal.App. 115 [185 P. 982].)'' (*Zeigler* v. *Bonnell*, 52 Cal.App.2d 217, 219 [126 P.2d 118].) Section 1238 of the Civil Code provides: ''If the claimant be married, the homestead may be selected from the community property or the separate property of the husband or, subject to the provisions of section 1239,[1] from the property held by the spouses as tenants in common or *in joint tenancy or* from the separate property of the wife.'' (Emphasis added.)

Prior to 1929, there was no express provision allowing a spouse to declare a homestead on property of husband and wife held in joint tenancy. The general rule was that a homestead could not be declared on joint tenancy property. The courts, however, had established an exception to that rule, to the effect that the wife alone, or the husband and wife together, could make a valid declaration of homestead on the joint tenancy property. (*Swan* v. *Walden*, 156 Cal. 195 [103 P. 931, 134 Am.St.Rep. 118, 20 Ann.Cas. 194]; *Schoonover* v. *Birnbaum*, 148 Cal. 548 [83 P. 999]; 13 Cal.Jur. pp. 451, 452.) In 1929, section 1238 of the Civil Code was amended. This amendment was held in *Watson* v. *Peyton*, 10 Cal.2d

---

[1]Section 1239, Civil Code, requires the consent of the wife, if the property to be homesteaded is her separate property.

156, 159 [73 P.2d 906], to have followed the decisions in these cases and to provide, in effect, a statutory permission for a spouse to declare a homestead in property held in joint tenancy by husband and wife. The above-quoted portion of section 1238 was adopted in 1937, and is specific on the subject.

A joint tenancy homestead does not increase the exemption from that of any other homestead. Section 1245 provides: "When an execution for the enforcement of a judgment . . ." (except in certain cases not relevant here) "is levied upon the homestead," the judgment creditor may take the necessary proceedings to have the property appraised, and if the appraisement values the property in excess of the exemption, to have it sold. In *Walton* v. *Walton,* 59 Cal. App.2d 26 [138 P.2d 54], this court discussed at some length the provisions providing for the sale of premises held in joint tenancy by husband and wife upon which the wife had impressed a homestead, in holding that the husband did not have the same rights to sell the property as a judgment creditor would. Respondents rely upon *Young* v. *Hessler,* 72 Cal.App.2d 67 [164 P.2d 65]. There an abstract of judgment against the husband alone was recorded. About nine months thereafter, the wife recorded a declaration of homestead on property held in joint tenancy by her and her husband. In holding that the judgment took priority over the homestead, and that the interest of the husband was subject to execution sale to satisfy the judgment, the court said (p. 69): "Such lien on the interest of Fred Hessler was therefore prior to the homestead declaration of his wife, Hazel, upon his interest since she did not file her declaration of homestead for record until March 20, 1942." Respondents argue "e converso" that if the wife's homestead declaration had been recorded prior to the recordation of the abstract of judgment, her homestead right would have prevailed. That is true, *up to the amount of the exemption.* But there is nothing in that case to justify respondents' contention that the husband's interest over and above the exemption cannot be levied upon.

In *Marelli* v. *Keating,* 208 Cal. 528 [282 P. 793], it was contended that homestead property, whatever its value, is not subject to attachment. The court said (p. 531): "The object of the homestead law is to protect the homesteader and those dependent upon him or her in the enjoyment of a domicile not exceeding $5,000 in value, and to this end a liberal construction of the law and facts will be indulged by

courts. When this object has been accomplished courts will not suffer this salutary statute to be used as a shield behind which those who would deal unjustly with creditors may find refuge." In *Ruddell* v. *Warne,* 68 Cal.App.2d 600 [157 P.2d 428], the court was considering what was apparently community property homesteaded by the wife, and which had been levied upon under a judgment against the husband. The court stated (p. 602): "The protection afforded by a declaration of homestead is limited to $5,000 in value and when the homesteaded property is enhanced in value any excess over the statutory limit of $5,000 is subject to the claims of the creditors of the owner." ·In *Yager* v. *Yager,* 7 Cal.2d 213 [60 P.2d 422, 106 A.L.R. 664], the court was considering the effect on a homestead on community property declared by a second wife, of a judgment for unpaid alimony thereafter obtained by a first wife against the husband. The court expressly recognized the fact that the excess over the homestead exemption could be reached, for it expressed the problem in the following language (p. 218): "This brings us to the most serious question involved on this appeal—is the homestead of the debtor and his second wife declared on their community property subject to execution sale (*except as it exceeds in value $5,000*) upon a judgment for alimony or support of a former wife and child? We are of the view that such an exception from freedom from forced sale should not be read into section 1241 of the Civil Code, in the absence of an express provision therefor." (Emphasis added.)

## EXEMPTION APPLIES TO THE PROPERTY, NOT TO HUSBAND'S INTEREST

At argument, the suggestion was made that the full exemption applied to the interest of the husband in the property, rather than to the property itself, so that in effect, the property would have to be worth over $10,000 before it could be sold to satisfy petitioner's judgment. This contention overlooks the fact that the exemption is of the homesteaded property rather than the husband's interest therein. As said in *Bell* v. *Wilson,* 172 Cal. 123, 126 [155 P. 625]: "Again, as was long ago decided in this state, the homestead in no wise depends upon the character of the title which the homestead claimant has. A mere naked possession, without other title, may be impressed with the homestead characteristic. (*Spencer* v. *Geissman,* 37 Cal. 96 [99 Am.Dec. 248].)" ". . . the homestead right is not an estate in the *land* but a mere *privi-*

*lege* of exemption from execution of such estate as the holder occupies.'' (*Arighi* v. *Rule & Sons, Inc.*, 41 Cal.App.2d 852, 855 [107 P.2d 970].) In *Alabama Power Co.* v. *Cornelius,* 211 Ala. 245 [100 So. 207], in considering a homestead on land held in tenancy in common the court said (p. 209 [100 So.]) : ''True, as suggested in brief of counsel for appellee, a tenant in common is entitled to a homestead exemption to the land held in common, but this does not give each owner the right to claim the full exemption to the joint property. The homestead is not increased on account of their fractional interests in the land, so as to make up in quantity what is wanting in extent of ownership. *Snedecor* v. *Freeman,* 71 Ala. 140; *Campbell* v. *Nobie,* 145 Ala. 233, 41 So. 745. The result is each of these plaintiffs would be entitled to an exemption not in excess of $1000 in value each, and not to the extent of $2000 each.'' In *Russell* v. *Laugharn,* 20 F.2d 95, in a bankruptcy proceeding against a wife the court found that the community interest in the property homesteaded under California laws was two-thirds, and the wife's separate interest was one-third. It then held that the $5,000 exemption should be apportioned between the community and separate interests in the same ratio. We are not concerned here with the apportionment between husband and wife of the $5,000 exemption, but only with the husband's interest in the property, over and above the exemption.

In *Estate of Davidson,* 159 Cal. 98 [115 P. 49], the court pointed out that a wife could not declare a homestead upon the husband's interest alone in property held by them as joint tenants. She could, however, declare a homestead on the land in its entirety.

The exemption, therefore, applies to the entirety of the land, rather than to any interest therein, and hence there can be only one exemption. Thus, if the property brings at a sale a sum in excess of $5,000, the sum of $5,000 is exempt and the creditor is entitled to be paid only out of the husband's portion of the excess, which would be one-half of that excess, if any.

''A declaration of homestead creates no new or additional title.'' (*Smith* v. *Bangham,* 156 Cal. 359, at p. 365 [104 P. 689, 28 L.R.A.N.S. 522].) ''. . . a declaration of homestead is subject to all rights in the property known by the person filing the declaration to exist.'' (P. 367.) This is so even though it has been held that the estate of a wife in joint tenancy is ''distinct from the estate of the husband.'' (*Van-*

*dall* v. *Teague,* 142 Cal. 471, 474 [76 P. 35].) The above principle, applied to the facts of this case, requires the holding that the interest of the husband in joint tenancy property is subject to execution sale (under proceedings as provided in the homestead statutes) if such property is valued in excess of the statutory exemption.

### ORDER FOR COSTS CORRECT

At the time of appointing the appraisers the court ordered the deposit by petitioner of the sum of $50 to cover costs. In its "Order Denying Petition to Levy Execution on Homestead," the court ordered this sum paid out as follows: $5.00 to the court reporter and $15 each to the appraisers. Petitioner contends that this order was erroneous because no bill was presented by the appraisers, nor evidence taken as to the "reasonableness of this disbursement." The allowance of fees to the appraisers was a matter entirely in the discretion of the court, except that section 1258 of the Civil Code limits the compensation to $5.00 per day to each appraiser. It would seem hardly necessary to say that a superior court judge should be able to determine generally, from his experience in such matters, the amount of time required for an appraisement of this kind, without the necessity of evidence, other than the report itself. We cannot say that the amount allowed here was excessive, or that the court abused its discretion. Moreover, no objection was made in the trial court to this allocation of the costs.

The order appealed from is reversed for the limited purposes herein indicated, and the cause is remanded to the trial court with instructions to proceed in accordance with the views herein expressed.

Peters, P. J., and Ward, J., concurred.