**In re Thomas Lee Swenor and Juanita Mae Swenor.**

**Thomas Lee SWENOR and Juanita Mae Swenor, Bankrupts/Objecting Parties/Appellees,**

v.

**Jerome E. ROBERTSON, Trustee Responding Party/Appellant.**

**Nos. 577–005000–M, C–77–2271.**

United States District Court, N. D. California.

April 6, 1978.

---

**674**

Richard E. Weger, San Jose, Cal., for bankrupts Thomas Lee and Juanita Swenor.

John W. Murray, Murray & Grube, Palo Alto, Cal., for responding party Jerome E. Robertson.

## ORDER

PECKHAM, Chief Judge.

This is an appeal by the trustee in bankruptcy, Jerome Robertson, from a decision by Bankruptcy Judge Moore that the bankrupts, Mr. and Mrs. Swenor, are entitled to a $30,000 homestead exemption rather than the $20,000 exemption allowed by the trustee.

The dispute as to the proper amount of the exemption centers around section 1260 of the California Civil Code. In 1970, the statute was amended to increase the homestead exemption from $15,000 to $20,000. In addition, a second paragraph was added, which stated,

> Any declaration of homestead which has been filed prior to January 1, 1977 shall be deemed to be amended on such date by increasing the value of any property selected and claimed to the value permitted

by this section on such date to the extent that such increase does not impair or defeat the right of any creditor to execute upon the property which existed prior to such date.

Cal.Civ.Code § 1260 (West Supp.1977). In 1976, the amount of the exemption was increased again, this time to $30,000. The second paragraph remained the same except for a change in the effective date from 1971 to 1977. The Swenors filed their petition in bankruptcy on March 17, 1977, but the parties have stipulated that certain of the obligations incurred by the Swenors were in existence prior to January 1, 1977.

The appellees concede that prior to 1970, an increase in the amount of a statutory exemption could not be given retroactive effect. The leading case so holding is *In re Rauer's Collection Co.*, 87 Cal.App.2d 248, 196 P.2d 803 (1948). There the court cited a series of California and federal decisions in support of its position,

> That the increase in exemption cannot be given a retroactive interpretation, as it would be an impairment of the obligation of contracts, and that the creditor is entitled to rely upon the exemption statutes as of the time the obligation was incurred, is well established.

*Id.* at 253, 196 P.2d at 806.[1] The court thus concluded, "As a prospective and not retroactive interpretation must be given to the 1945 amendment to section 1260, it is obvious that the exemption to which respondents are entitled is that which was in existence at the time of the creation of the debt upon which the judgment is founded, . . . ." The district court in *In re Towers*, 146 F.Supp. 882 (N.D.Cal.1956), aff'd sub nom. *Towers v. Curry*, 247 F.2d 738 (9th Cir. 1957), was sharply critical of the *Rauer* holding, which in the court's opinion unnecessarily did "violence to the fundamental concept underlying the benign object of the homestead statute." *Id.* at 885–86. The court nevertheless applied the *Rauer* rule for reasons that were best expressed by the Ninth Circuit, in its affirming opinion,

---

1. This position was reiterated in a recent decision involving similar issues. *Daylin Medical &* *Surgical Supply, Inc. v. Thomas*, 69 Cal.App.3d Supp. 37, 42, 138 Cal.Rptr. 878, 880 (1977).

By reason of § 6 of the Bankruptcy Act (11 U.S.C.A. § 24), we are required to interpret § 1260 of the Civil Code as the California courts have done. While the Civil Code itself provides that the homestead statutes should be liberally construed, and the courts have repeatedly said that is their obligation, it is *their* liberal construction, and not ours, which must control.

247 F.2d at 740 (emphasis in original).

The bankrupts argue, however, that by adding the second paragraph to section 1260 in 1970, "the legislature changed its statutory plan . . . to make the increases in homestead exemptions effective against preexisting creditors except those creditors which [sic] already had a right to execute on the property." Appellees' brief at 4. They further argue that a creditor with a right to execute is a creditor who has obtained a writ of execution. The amendment's language, however, is subject to varied interpretations, *see, e. g., Selected 1970 California Legislation: Homesteads; increase of value of exemption,* 1 Pac.L.J. 328, 328 (1970), and the sparse "legislative history" that has been provided to the court does not indicate a legislative intent to apply the exemption increases retroactively to all preexisting creditors except those who have obtained writs of execution. More importantly, in light of the fact that the California courts have grounded their decisions on a state, as well as federal constitutional basis to interpret the amendment so narrowly would render it unconstitutional, at least under California law. We thus conclude that the effect of the 1970 amendment was to relieve prior homestead declarants of the need to file a new declaration and that the proviso, though admittedly somewhat lacking in clarity, incorporates existing California case law.[2]

Our interpretation of section 1260 does not mean, however, that the Swenors are entitled *in Bankruptcy Court* to only a $20,000 exemption. Section 6 of the Bankruptcy Act (hereinafter "Act") provides, in relevant part,

This Act shall not affect the allowance to bankrupts of the exemptions which are prescribed by the . . . State laws in force *at the time of the filing of the petition.*

11 U.S.C. § 24 (1976) (emphasis added). In *England v. Sanderson,* 134 F.Supp. 484 (N.D.Cal.1955), *rev'd,* 236 F.2d 641 (9th Cir. 1956), some of the bankrupt's creditors became such prior to the increase in the homestead exemption allowance from $7,500 to $12,500. The district court held that section 6 of the Act limited the trustee to the higher amount.

To allow the trustee here, who is acting for the general creditors who became such after September 1, 1953 as well as for those who became creditors earlier, to set aside the exemption of $12,500 would manifestly deny to the bankrupt the exemption which the laws of California have given him against all but a specific group of creditors. Section 6 of the Act

---

**2.** A similar conclusion was reached in *Selected California Legislation: Property; homestead and attachment and execution exemptions,* 8 Pac.L.J. 457 (1977). In summarizing the effect of the 1977 increase, the editors stated, "This increase will not defeat the right of any prior creditor on a debt that existed prior to January 1, 1977, however, because of the decision in *In re Rauer's Collection Co. . . ." Id.* The editors' comments on the amendment of section 690.3 of the Code of Civil Procedure to increase the amount of the exemption for housetrailers, mobilehomes, etc., also are relevant and further support our conclusion.

Chapter 471 does not refer to creditor's rights on debts that arose prior to its enactment. The question may therefore arise as to whether the courts will follow the reasoning in *In re Rauer's Collection Co.* [87 Cal. App.2d 248, 253, 196 P.2d 803, 806 (1948)] in which the court denied a retroactive increase in the exemption. *Rauer* was criticized in *Matter of Melvin J. Towers* [146 F.Supp. 882, 885–86 n.2 (N.D.Cal.1956), *aff'd,* 247 F.2d 738 (9th Cir. 1957)] as being inflexible by not allowing the value of the exemption to keep pace with the times in order to protect the homeowner. It would appear, however, that the courts will continue to follow *Rauer* and deny a retroactive increase in the amount of the exemption, otherwise the new exemption will constitute an unlawful impairment of the obligation of contracts [*In re Rauer's Collection Co.,* 87 Cal.App.2d 248, 253, 196 P.2d 803, 806 (1948)] *Id.* at 459.

was intended to control the entire Act, including Section 70, sub. c.

*Id.* at 485. The court further stated that "[t]he remedy of those creditors whose rights under California law extend beyond the $12,500 exemption is in the State Courts." *Id.* Relying on section 70(c) of the Act,[3] the so-called "strong-arm clause," the Ninth Circuit reversed, stating,

Since a pre-existing creditor could have obtained a lien by legal or equitable proceedings at the time of bankruptcy under state law, the trustee takes the $5,000 difference for the bankrupt estate to be distributed among the general creditors.

236 F.2d at 643.

 This construction of section 70(c) was of questionable validity at the time *Sanderson* was decided, and a subsequent Supreme Court decision made it clear that the Ninth Circuit was mistaken in using section 70(c) to give the trustee the status of a preexisting creditor. As authority for its construction of section 70(c), the *Sanderson* court cited *Constance v. Harvey*, 215 F.2d 571 (2d Cir. 1954), *cert. denied*, 348 U.S. 913, 75 S.Ct. 294, 99 L.Ed. 716 (1955), which held that the trustee was entitled under § 70(c) to assert the lien of a hypothetical creditor who had extended credit before the perfection of the security transaction involved in that case. This doctrine, however, was rejected by the Supreme Court in *Lewis v. Manufacturers National Bank of Detroit*, 364 U.S. 603, 81 S.Ct. 347,

5 L.Ed.2d 323 (1961). There the Court stated,

We think that one consistent theory underlies the several versions of § 70 which we have set forth, viz., that the rights of creditors—whether they are existing or hypothetical—to which the trustee succeeds are to be ascertained as of "the date of bankruptcy," *not at an anterior point of time.* That is to say, the trustee acquires the status of a creditor as of the time when the petition in bankruptcy is filed.

*Id.* at 607, 81 S.Ct. at 349 (emphasis added). In short, the section 70(c) creditor is one who both extends credit and obtains a judicial lien as of the date of bankruptcy. Thus, a proper declaration of homestead prior to the date of bankruptcy would be valid as against the claims of such a creditor and hence valid as against the trustee under section 70(c).

This would conclude our discussion of the proper interpretation of section 70(c) were it not for the Ninth Circuit's decision in *Miguel v. Walsh*, 447 F.2d 724 (9th Cir. 1971). There the court reaffirmed *Sanderson* and relied upon it in holding that the trustee could deny the bankrupt's claim of homestead where one of the creditors had a claim superior to the homestead exemption because of the bankrupt's fraud.[4] The bankrupt there did not question the validity of *Sanderson* at the time it was decided, but argued that the 1966 amendments to section 70(c) had limited the scope of that

3. 11 U.S.C. § 110(c) (1976). At the time of the decision in *Sanderson*, the relevant portion of § 70(c) read as follows:

The trustee, as to all property, whether or not coming into possession or control of the court, upon which a creditor of the bankrupt could have obtained a lien by legal or equitable proceedings at the date of bankruptcy, shall be deemed vested as of such date with all the rights, remedies, and powers of a creditor then holding a lien thereon by such proceedings, whether or not such a creditor actually exists.

In 1966, clauses 1 and 2 were added and the existing provisions, with some modification, became clause 3. The current version of § 70(c) provides, *inter alia*,

The trustee shall have as of the date of bankruptcy the rights and powers of: (1) a credi-

tor who obtained a judgment against the bankrupt upon the date of bankruptcy, whether or not such a creditor exists, (2) a creditor who upon the date of bankruptcy obtained an execution returned unsatisfied against the bankrupt, whether or not such a creditor exists, and (3) a creditor who upon the date of bankruptcy obtained a lien by legal or equitable proceedings upon all property, whether or not coming into possession or control of the court, upon which a creditor of the bankrupt upon a simple contract could have obtained such a lien, whether or not such a creditor exists.

4. Because of the bankrupt's fraudulent conduct, the court might have been able to reach the same result via other provisions of the Act.

section and that, therefore, *Sanderson* was not controlling. In rejecting this argument the court quoted favorably from Collier on Bankruptcy wherein the authors view the 1966 amendments as enhancing, if anything, the trustee's powers under section 70(c). 4A Collier on Bankruptcy ¶ 70.49, at 595–96 (14th ed. 1943). The court, however, overlooked the authors' criticism of *Constance* and, implicitly of *Sanderson*, which is discussed in the text as an example of the "far reaching implications" of the holding in *Constance. Id.* ¶ 70.51[2] at 622–26 (section entitled "Date of Trustee's 'Extension of Credit.' "). The court also overlooked the Supreme Court's holding in *Lewis, supra.* We are confident that consideration of that decision would have led the Ninth Circuit to reject its earlier interpretation of 70(c).[5]

The construction of section 70(c) adopted herein not only corrects an earlier misinterpretation, but it also prevents potentially harsh results. For example, under the *Sanderson* holding, if there is at least one preexisting creditor[6] whose claim is not limited by the increased exemption amount, then even if that claim is for one dollar, the bankrupt is entitled only to the lower exemption, to the obvious benefit of all post-increase creditors who would otherwise be entitled to reach only the equity in excess of the higher figure.

Having decided that section 70(c) does not allow the trustee to assert the lower exemption allowance merely because there exist claims that pre-date the increase, we could hold, as did the district court in *Sanderson*, that the $30,000 exemption is good as against the trustee and that preexisting creditors must seek their remedies in state court. This is a particularly attractive path here where, to our knowledge, there exist no rulings by the California courts as to the effect of the 1970 amendment to section 1260 of the California Civil Code. But that decision was not very difficult as our earlier discussion demonstrates and, moreover, there are several disadvantages entailed in such a choice. First, the bankruptcy proceedings would have to be stayed to allow the preexisting creditors to establish their rights in state court. Otherwise such proceedings would be barred by the bankrupt's discharge. Bankruptcy Act § 17, 11 U.S.C. § 35 (1976); Collier on Bankruptcy ¶ 6.10, at 810–17 (14th ed. 1943). This is undesirable because it could postpone significantly the relief to which the bankrupts might otherwise be entitled. A second disadvantage is the resultant race to the courthouse that the *Sanderson* court found so distasteful because of the possibility that one creditor might obtain all of the difference between the lower and higher exemptions to the

---

**5.** Representative Edwards' proposed substitute to H.R. 8200, 95th Cong., 1st Sess. (1977), which is a general revision of the Bankruptcy Act, would remove any lingering doubts as to the proper interpretation of § 70(c). That bill's equivalent of what is now clause 3 of § 70(c) reads as follows: "The trustee shall have, as of the commencement of the case, . . . the rights and powers of, . . . (1) *a creditor that extends credit to the debtor at the time of the commencement of the case*, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained a judicial lien, whether or not such a creditor exists." § 544(a)(1) (emphasis added).

**6.** The Ninth Circuit requires the existence of an actual creditor as a prerequisite to the use of section 70(c) by the trustee, *Pacific Finance Corporation v. Edwards*, 304 F.2d 224 (1962), even though § 70(c) states "whether or not such a creditor exists." This position actually

mitigates some of the potential harshness noted above since there would always be a hypothetical creditor to whom only the lower exemption applies. This is not a problem when section 70(c) is construed as set forth above. In any event, the *Pacific Finance* court's rationale for allowing the trustee to hypothesize only the lien while requiring an actual creditor "who could have obtained a lien" is of very questionable validity in light of the 1966 amendments to § 70(c) which added the words "upon which a creditor of the bankrupt upon a simple contract could have obtained such a lien." The placement of this language immediately before the phrase, "whether or not such a creditor actually exists," makes it clear that the latter refers not only to "a creditor then holding a lien," but also to "a creditor . . . [who] could have obtained a lien." This point is discussed more thoroughly in 4A Collier ¶ 70.52[2], at 609–14 (14th ed. 1943).

exclusion of other preexisting creditors. 236 F.2d at 643.

A second option is that proposed by Mr. Treister, a noted expert in the field.[7] *See* Treister, *The Effect in Bankruptcy of the Increased Homestead Exemption,* 39 J.St.B. Cal. 143 (1964). Referring to the 1963 amendments to section 1260, he suggested that

This [solution], as applied to cases arising under the amendments effective September 20, 1963, would recognize the right of a bankrupt head of family to a $15,000 exemption as against the trustee, but would confer upon the trustee the additional power to reach for the benefit of creditors generally that portion of the difference between $12,500 and $15,000 as could be subjected to levy by actual creditors holding preamendment claims. Thus, for example, if the amount of preamendment claims totaled $1,000, the bankrupt would get in effect a $14,000 homestead. Such a solution does no violence to the theory of Section 70c, and recognizes for Section 6 purposes that the exemption "in force" at the date of bankruptcy is $12,500 as to some creditors and $15,000 as to others. It has the advantage of avoiding the possibly harsh consequences for the bankrupt which the extension of *Moore v. Bay* entails, namely, that under that rule a bankrupt might well lose $2,500 of his homestead exemption merely because one creditor holds a $1 claim arising prior to September 20, 1963. It gives creditors as a group the same rights to the homestead as they collectively would have had outside of bankruptcy, yet it distributes the nonexempt portion of the homestead in bankruptcy ratably, and avoids any undesirable "grab law" result.

*Id.* at 147–48. This latter proposal is, we think, the most desirable accommodation of the competing interests of the creditors and the debtor for the reasons stated by Mr. Treister.

7. Mr. Treister is currently an instructor of law at the University of Southern California Law School and at Stanford Law School. He is also Vice Chairman of the National Bankruptcy

 The Swenors, therefore, are entitled to an exemption of $30,000 less the aggregate of the pre-1977 claims. If such claims exceed $10,000, then the exemption shall be $20,000. The decision of the bankruptcy judge is thus vacated and this case is remanded for further proceedings in accordance with this opinion.

IT IS SO ORDERED.

Conference and a member of the Advisory Committee on Bankruptcy Rules, Judicial Conference of the United States.