**In re Cynthia MORZELLA, Debtor.**

**Bankruptcy No. 2–93–04613.**

United States Bankruptcy Court,
D. Connecticut.

Aug. 30, 1994.

Edward W. Manasse, Manasse, Slaiby & Leard, Torrington, CT, for debtor.

Matthew P. Woermer and Michael Broderick III, Moynahan, Ruskin, Mascolo, Minnella & Crozier, Waterbury, CT, for Raymond Costa, creditor.

### RULING ON OBJECTION TO EXEMPTION

ROBERT L. KRECHEVSKY, Chief Judge.

### I.

#### ISSUE

The debtor, Cynthia Morzella, filed her Chapter 7 petition on December 10, 1993, listing as an unencumbered asset valued at $55,000 a one-half interest in her residence located at 57 Pine Ridge Drive, Harwinton, Connecticut. The debtor, electing in her bankruptcy petition the Connecticut state law exemptions, claimed the residence as fully exempt under Conn.Gen.Stat. § 52–352b(t), which exempts a "homestead of the exemptioner to the value of seventy-five thousand dollars...."

Raymond Costa (Costa), a creditor whose state-court claim against the debtor for injuries sustained in a 1986 automobile accident was pending on the date of the debtor's bankruptcy petition, timely filed an objection to the debtor's homestead exemption. Costa contends, in effect, that since his claim against the debtor accrued prior to October 1, 1993, the effective date of Conn.Gen.Stat. § 52–352b(t), the exemption, at least to his claim, is ineffectual, and the residence remains property of the debtor's estate for the purpose of satisfying his claim.

The debtor seemingly agrees that the homestead exemption statute operates prospectively only, but she denies Costa can seek satisfaction of his claim from her interest in the residence. The court granted the debtor her unopposed discharge on March 24, 1994.

### II.

#### A.

#### *Connecticut's Homestead Exemption*

Connecticut's exempt property statute was amended during 1993 by Connecticut Public Act 93–301 (the "Act") to establish, apparently for the first time in Connecticut, a homestead exemption and in the amount of $75,000. Conn.Gen.Stat. § 52–352b, as amended by the Act, provides:

The following property of any natural person shall be exempt:

....

(t) The homestead of the exemptioner to the value of seventy-five thousand dollars, provided value shall be determined as the fair market value of the real property less the amount of any

statutory or consensual lien which encumbers it.

Conn.Gen.Stat. § 52–352b(t). "Exempt" is defined as "not subject to any form of process or court order for the purpose of debt collection," and "homestead" is defined as "owner-occupied real property used as a primary residence." *Id.* § 52–352a(c), (e). Read together, the homestead exemption seems to provide that a creditor may not subject to any form of process or court order, for the purpose of debt collection, the residence of an exemptioner to the value of $75,000, net of existing statutory or consensual liens.

■ The Act provides that it "shall take effect October 1, 1993, and shall be applicable to any lien for any obligation or claim arising on or after said date." 1993 Conn.Pub.Act 301, § 3. The most reasonable interpretation of this section is that the Act applies to any prejudgment attachment, *see* Conn.Gen. Stat. § 52–278b, or judgment lien, *see id.* § 52–380a, placed on the exemptioner's residence for the purpose of collecting a debt incurred as a result of an obligation or claim arising on or after October 1, 1993.

Legislative history generally supports this interpretation of the exemption's application. Representative Holbrook, who introduced the legislation, explained in legislative hearings on the Act that "[w]e are not talking about anything here that is retroactive. It takes effect with any unsecured loans that occur after [October 1, 1993] . . . ." Conn.Gen.Assembly House Proceedings 1993, Vol. 36, Part 30, [hereinafter House Proceedings] at 10824, 10855–56.

■ To date, two Connecticut courts have held that the homestead exemption only applies to obligations and claims arising after October 1, 1993, the effective date of P.A. 93–301. Based on the express statutory language, the legislative history, and the limitations of the Contract Clause on retroactive state legislation, the Connecticut Superior Court, in *Centerbank v. Associated Risk Servs., Inc.,* No. 93–035–50–42S, 1994 WL 51183 (Conn.Super.Ct. Feb. 7, 1994), determined that the homestead exemption only applies in actions to liquidate claims arising after the statute's effective date:

> Both the legislative history and the relatively clear language used in the Act appear to make it obvious that the intention of the Legislature was not to affect the ability to obtain a remedy when the obligation or claim was already in existence on October 1, 1993. It would appear that the Act is simply inapplicable unless the original obligation or claim for which judicial remedy is now sought arose after the effective date of the Act. Not only is this conclusion supported by the legislative history, but it is probably mandated by the federal constitution.

*Id.* at *1. *See also L. Suzio Asphalt Co. v. Ferreira Constr. Corp.,* No. 35–19–12, 1993 WL 448441, at *2 (Conn.Super.Ct. Oct. 19, 1993) (granting application for prejudgment attachment because the statute's "clear and unambiguous language" provides that the exemption does not apply to actions to enforce an obligation incurred before the statute's October 1, 1993 effective date). This court will follow the state courts' consistent construction of the Act and give the homestead exemption prospective application only.[1] *See*

1. While the court is satisfied that the exemption is not to be applied retrospectively, the context in which the legislature created the exemption could create the impression that retrospective application was the purpose behind the legislation. Representative Holbrook stated that the homestead exemption was meant to "send a message in light of this bad economy that we have been faced with, to the people of the State that we do care and that we do hear them and we are making some effort to protect their homes." House Proceedings at 10856. Representative Radcliffe, another supporter of the legislation, similarly stated that creating a homestead exemption was "[s]omething that we really should do, particularly in difficult economic times

where the threat of losing a home is much greater than in boom times." *Id.* at 10858. These comments, if standing alone, could support an interpretation that the purpose of the legislation was remedial and intended to prevent Connecticut residents from losing their homes during an economic period when many people were having difficulty meeting existing liabilities. Applying the homestead exemption prospectively to only those liabilities that were incurred after the exemption became effective is of no assistance to residents delinquent in their current liabilities. *Cf. In re Johnson,* 69 B.R. 988, 995 (Bankr. D.Minn.1987) (interpreting an amendment increasing the Minnesota rural homestead exemp-

*In re Bassin,* 637 F.2d 668, 670 (9th Cir.1980) ("A court in its consideration of the state law applicable in a bankruptcy proceeding must look both to the particular statute and to the construction placed on that statute by the authoritative courts."). *See also In re Toronto,* 165 B.R. 746, 757–8 (Bankr.D.Conn. 1994) (Shiff, J.) ("Under Connecticut law a statutory enactment affecting substantive rights, as P.A. 93–301 indisputably does, is presumed to have only prospective effect in the absence of a clear and unequivocal expression of a contrary legislative interest. The plain language of Pub.Act 93–301 supports a prospective application only.") (citations omitted).

## B.

### *Issues Arising upon Application of State Homestead Exemption in Bankruptcy Cases*

The application prospectively only of a newly enacted exemption creates a number of issues as to whether and how exempted property is to be administered for unaffected creditors. When a debtor has creditors whose claims arose both before and after the effective date of the exemption, the debtor's creditors will have nonuniform rights vis-a-vis the exempt property. Questions therefore arise as to which court, bankruptcy or state, should determine the claims of creditors not subject to the exemption. Courts, to date, have endorsed a variety of solutions to these administrative issues.

tion to apply to pre-existing liabilities because the legislation "was intended to address an existing and deepening crisis in rural Minnesota ..., not a future, anticipated crisis"). It is, however, unnecessary to address the complicated issue of whether the Connecticut exemption statute would pass constitutional muster if the legislature had intended that it have retrospective application.

2. Section 541(a)(1) provides:
The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:
(1) ... all legal or equitable interests of the debtor in property as of the commencement of the case.

Unlike the definition of estate property under the Bankruptcy Code (the Code), *see infra* note 2, estate property under the former Bankruptcy Act of 1898 did not include exempt property. The Supreme Court, in *Lockwood v. Exchange Bank,* 190 U.S. 294, 23 S.Ct. 751, 47 L.Ed. 1061 (1903), held that because bankruptcy courts did not have jurisdiction over exempt property, the claims of creditors who had special rights to the debtor's otherwise exempt property would have to be litigated in state court. The Court noted that while the procedure of litigating these rights in state courts would create administrative problems in the bankruptcy case—for example, the debtor's discharge would have to be delayed until the particular creditors could sue in state court on their claims—such a procedure was mandated on jurisdictional grounds. *Id.* at 299–301, 23 S.Ct. at 753–54.

The Seventh Circuit, in a case decided under the former Bankruptcy Act, followed the dictate of *Lockwood* and held that in bankruptcy cases, the court should set aside as exempt the property claimed under state statutes in effect at the time the petition was filed, and creditors whose claims arose prior to the effective date of the exemption statute would litigate their rights in state court. *In re Zahn,* 605 F.2d 323, 324 (7th Cir.1979), *cert. denied,* 444 U.S. 1075, 100 S.Ct. 1022, 62 L.Ed.2d 757 (1980).

Because Code § 541(a)(1)[2] includes exempt property as property of the estate, subject to the debtor exempting such property out of the estate under § 522,[3] the reason-

11 U.S.C. § 541(a)(1).

3. The legislative history expressly states that § 541(a)(1)
has the effect of overruling *Lockwood v. Exchange Bank,* 190 U.S. 294, 23 S.Ct. 751, 47 L.Ed. 1061 (1903), because it includes as property of the estate all property of the debtor, even that needed for a fresh start. After the property comes into the estate, then the debtor is permitted to exempt it under proposed 11 U.S.C. 522, and the court will have jurisdiction to determine what property may be exempted and what remains as property of the estate. H.R.Rep. No. 595, 95th Cong., 1st Sess. 368 U.S.Code Cong. & Admin.News 1978, pp. 5787, 6323–6324 (1977). *See, e.g., In re Graham,* 726 F.2d 1268, 1271 (8th Cir.1984) ("The new Bankruptcy Code reflects a change in the concept of

ing of pre-Code opinions concerning which court should determine the claims of creditors not subject to the exemption need not apply to Code cases. The bankruptcy court presently maintains jurisdiction over the exempt property until the property is actually exempted out of the estate. No ruling has been located which carries the *Lockwood–Zahn* approach over to a bankruptcy case governed by the Code. One California bankruptcy court permitted creditors whose claims arose prior to the effective date of an exemption statute to maintain their causes of action in the bankruptcy court by objecting to the exemption. *In re Skipwith,* 9 B.R. 730, 738 (Bankr.S.D.Cal.1981), *overruled on other grounds, In re Emmerich,* 19 B.R. 666 (9th Cir. BAP 1982). Presumably the *Skipwith* court would order payment to such creditors out of the exempted property. Another California bankruptcy court has held that "the trustee [has] the ... power to reach for the benefit of creditors generally that portion of the increase in exemption which could be subjected to levy by actual creditors holding pre-amendment claims." *In re Murillo,* 4 B.R. 612, 614 (Bankr. C.D.Cal.1980); *accord, First National Bank of Mobile v. Norris,* 701 F.2d 902, 904 (11th Cir.1983). *See also Goldsby v. Stewart,* 46 B.R. 692 (S.D.Ala.1983); *In re Perine,* 46 B.R. 695 (S.D.Ala.1983).

*Murillo* analyzes the method by which the amount of a nonuniform exemption should be determined. Under this method, the debtor is entitled to the exemption amount allowed by the exemption statute in effect as of the commencement of the case, minus the aggregate of all claims pre-dating the amendment, with the aggregate limited to the amount of the increase in the exemption. *Id.* at 614. *Cf. also Swenor v. Robertson,* 452 F.Supp. 673 (N.D.Cal.1978) (pre-Code case relied upon by the *Murillo* court). The method adopted in *Murillo* was followed by another California bankruptcy court in *Gill v. Halub (In re Halub),* 25 B.R. 617, 620 (Bankr. C.D.Cal.1982). *But. cf. In re Rester,* 46 B.R. 194 (S.D.Ala.1984).

property of the estate. Unlike the Act, the Code does not exclude exempt property from the estate.").

## III.

### CONCLUSION

The procedural concepts adopted by courts post-Code for having the bankruptcy court administer the exempt homestead asset and distribute to those eligible creditors holding pre-amendment claims the nonexempt portion of the homestead clearly makes the most sense and is adopted by this court.[4] It avoids the spectacle of the pre-amendment creditors rushing to be the first to attach the homestead to the exclusion of subsequent attachments. It should be acknowledged that this solution is based upon ideas advanced by Professor George M. Treister, an eminent bankruptcy expert. The district court, in *Swenor,* quoted extensively from a Treister article, *The Effect in Bankruptcy of the Increased Homestead Exemption,* 39 J.St.B.Cal. 143 (1964), in which Professor Treister concluded, "[This solution] gives creditors as a group the same rights to the homestead as they collectively would have had outside of bankruptcy, yet it distributes the nonexempt portion of the homestead in bankruptcy ratably, and avoids any undesirable 'grab law' result." *Id.* at 148.

The objection by Costa to the debtor's exemption of her homestead is sustained to the extent, if any, that Costa's pending claim is subsequently established, and the stay afforded by Code § 362(a) continues for such purposes. It is

SO ORDERED.

4. This proceeding does not involve any of the issues addressed by the Supreme Court in *Owen v. Owen,* 500 U.S. 305, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1991).